<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARY BEAM,<br><br>       Plaintiff,<br><br>v.<br><br>THE TRANSPORTATION AND<br>SECURITY ADMINISTRATION, et al.,<br><br>       Defendants. | Civ. No. 10-4778 (ES)<br><br>**O P I N I O N** |

*Appearances by:*

BRAMNICK, RODRIGUEZ, MITTERHOFF, GRABAS & WOODRUFF, LLC
By: Gary J. Grabas, Esq.
1827 East Second Street
Scotch Plains, New Jersey 07076

 *Attorneys for Plaintiff,*

WHITE AND WILLIAMS LLP
By: Paul Pianalto III, Esq.
  Geoffrey F. Sasso, Esq.
The Atrium
East 80 Route 4
Paramus, New Jersey 07652

 *Attorneys for Defendant AFCO AvPorts Management LLC*

**<u>DEBEVOISE, Senior District Judge</u>**

   On September 23, 2009, Plaintiff Mary Beam tripped and fell over a series of pedestrian

line stanchions located at the Terminal A2 security checkpoint of Newark Liberty International

Airport, which resulted in medical injuries. On September 17, 2010, Ms. Beam filed a Complaint against Defendants Port Authority of New York and New Jersey ("Port Authority"), Transportation and Security Administration ("TSA"), Jet Blue Airways ("Jet Blue"), and fictitiously named corporations and individuals, for negligence. On March 18, 2011, Ms. Beam filed an Amended Complaint containing additional factual allegations. On September 23, 2011, Ms. Beam moved to file a Second Amended Complaint against the TSA and fictitiously named corporations and individuals, which was granted on November 22, 2011. On December 22, 2011, Ms. Beam moved to file a Third Amended Complaint to add AFCO AvPorts Management LLC ("AFCO"), Continental Airlines, United Continental Holdings, and Gateway Group One, and to reinstate Jet Blue and the Port Authority, as Defendants. That motion was granted on January 17, 2012, and the Third Amended Complaint was filed on March 12, 2012.

AFCO now moves for Summary Judgment in its favor on Ms. Beam's negligence claim. For the reasons set forth below, AFCO's motion is GRANTED.

### I. BACKGROUND

The basis of Defendants' liability alleged in the Complaint and Amended Complaints is that Defendants "either owned, maintained and/or controlled the premises" where Ms. Beam fell. On January 11, 2011, Jet Blue sent a letter to Ms. Beam and the Port Authority stating that (1) Jet Blue had no ownership or authority over the area in which Ms. Beam fell; (2) the TSA has exclusive control over that area; and (3) Jet Blue should therefore be dismissed from this action.[1] See (Grabas Cert., Ex. C.)

On May 6, 2011, in response to Ms. Beam's discovery demands, the Port Authority submitted a certification of Fred Longernecker, Principal Property Representative for the Port

---

[1] On May 10, 2011, Ms. Beam dismissed her claim against Jet Blue, but later reasserted it on March 12, 2012 in her Third Amended Complaint.

Authority at Newark Airport. The certification states that "the A2 security checkpoint screening area is operated and controlled exclusively by the Transportation Security Administration" (Longernecker Cert. ¶5). However, "the airlines operating out of Terminal A are ultimately responsible for the cleaning and maintenance of non-exclusive areas within the terminal," including the A2 security checkpoint screening area. (Id. at ¶6) "The airlines have secured various cleaning contracts for the non-exclusive areas and said contracts are managed by way of a third-party administrator, namely AFCO d/b/a AvPorts." (Id.)

Mr. Longernecker further certifies that "[a]s for the cleaning and maintenance of the A2 security checkpoint screening area, while the ultimate burden lies with the airlines, the TSA has chosen to secure their own independent cleaning contractor over concerns involving security and in an attempt to control access to the screening equipment. As such, I certify that the Port Authority has no responsibility or obligation to clean or maintain the A2 security checkpoint screening area." (Id. at ¶7). "The responsibility for the day-to-day configuration and management of the A2 security checkpoint screening area lies exclusively with the TSA. The TSA is responsible for the placement of floor mats . . . as well as the placement of stanchions . . . ." (Id. at ¶8.)

On June 20, 2011, in response to Ms. Beam's interrogatories, the TSA stated that it "procures and uses 'footprint' and anti-fatigue floor mats in the A2 security checkpoint screening area in Terminal A of Newark Airport. Air carriers, such as Continental Airlines, also procure and use floor mats that may be used in and around the A2 security checkpoints screening area in Terminal A of Newark Airport." (Grabas Cert., Ex. F.) However, "the carpeting in Terminal A is not placed, removed, or maintained by the TSA." (Id.) The TSA further maintained that "the Port Authority and air carriers are responsible for placing and removing the stanchions at the A2

3

security checkpoint screening area in Terminal A of Newark Airport. To the extent that the stanchions have been procured by TSA, TSA maintains them." (Id.)

On July 1, 2011, in response to discovery requests, the Port Authority provided Ms. Beam with a copy of a work permit issued by the Port Authority to AFCO under which AFCO would "provide building janitorial and maintenance services on Permitted Areas of the Airport to Approved Aircraft Operators or other Persons at the Airport . . . ." (Grabas Cert., Ex. 6.)

On September 8, 2011, Ms. Beam entered into a Stipulation of Dismissal of her claim against the Port Authority.[2] On September 9, 2011, in response to discovery requests, the TSA again maintained that "the Port Authority and air carriers are responsible for placing and removing the stanchions at the A2 security checkpoint screening area in Terminal A of Newark Airport." (Grabas Cert., Ex. H.)

On September 23, 2011, in her Second Amended Complaint, Ms. Beam continued to pursue the TSA and fictitious defendants who "maintained, controlled and [were] responsible for the assembly, set-up and display of the pedestrian line stanchions at the security checkpoint within the corridor/terminal leading towards gates A20-28 located within the Newark International Airport."

On October 13, 2011, Ms. Beam's counsel took Mr. Longernecker's deposition, where he testified that the A2 security checkpoint area is maintained by the TSA, and that the stanchions in that area are owned, configured, and maintained by the TSA. He testified that a TSA employee at one point told him that the TSA owned the stanchions and that Port Authority employees were not allowed to touch or move them. Ms. Beam's counsel then introduced a Port Authority document stating that "The Port Authority contract guard shall reconfigure stanchions

---

[2] Ms. Beam reasserted her claim against the Port Authority in the Third Amended Complaint.

4

and podiums . . . to prevent unauthorized entry into the checkpoint area." (Grabas Cert., Ex. J.) Mr. Longernecker testified that he had never seen that document before.

On March 12, 2012, Ms. Beam named AFCO as a Defendant in her Third Amended Complaint. She alleged that AFCO "was the custodial tenant at terminal A within the Newark International Airport," and that AFCO "owned, maintained and/or controlled the premises within the corridor/terminal leading towards gates A20-A28 located within the Newark International Airport." (TAC ¶¶ 16, 20.)

## II.  DISCUSSION

AFCO now moves for summary judgment against Ms. Beam on her negligence claim. In doing so, AFCO argues that (1) that claim is barred by the applicable two-year statute of limitations; and (2) Ms. Beam cannot satisfy the relation back doctrine to toll the statute of limitations. Ms. Beam argues that she need not satisfy the relation back doctrine in this case because New Jersey's rule on the use of fictitious names independently allows Ms. Beam to toll the statute of limitations.

**A.     Standard of Review**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude granting summary judgment.

The party moving for summary judgment has the burden of showing that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, it may discharge its burden under the summary judgment standard by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine factual dispute exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In deciding whether a dispute of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

**B.      AFCO's Motion**

Under New Jersey law, personal injury actions must be brought within two years of the plaintiff's injury. See N.J.S.A. 2A:14-2. Here, it is undisputed that Ms. Beam's injury occurred on September 23, 2009. It is also undisputed that she brought her claim against AFCO on March 12, 2012, more than two years after the statute of limitations expired.

Ms. Beam contends that New Jersey Court Rule 4:26-4 allows her to toll the statute of limitations by listing fictitious defendants in the initial Complaint. Rule 4:26-4 provides that "[i]n any action . . . if the defendant's true name is unknown to the plaintiff, process may issue

against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification." The New Jersey Supreme Court has "construed Rule 4:26-4 to permit a plaintiff who institutes a timely action against a fictitious defendant to amend the complaint after the expiration of the statute of limitations to identify the true defendant." Viviano v. CBS, Inc., 101 N.J. 538, 548 (1986). Consequently, "an amended complaint identifying the defendant by its true name relates back to the time of filing of the original complaint, thereby permitting the plaintiff to maintain an action that, but for the fictitious-party practice, would be time-barred." Id. (citation omitted).

However, Rule 4:26-4 only "suspends the statute when the plaintiff is unaware of the true identity of the defendant." Id. at 547 (citation omitted); see also Hernandez v. St. James Hosp., 214 N.J. Super 538, 543 (App. Div. 1986) ("[T]he fictitious-defendant rule applies when a party knows or has reason to know his injury has been negligently inflicted but cannot, at the time of injury or within a reasonable time thereafter, ascertain the identity of the wrongdoer."). Thus, "[w]hen a plaintiff knows or has reason to know that he has a cause of action against an identifiable defendant and voluntarily sleeps on his rights so long as to permit the customary period of limitations to expire, the pertinent considerations of individual justice as well as the broader considerations of repose, coincide to bar his action." Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 115 (1973).

In this case, Ms. Beam named fictitious defendants in her initial Complaint as having "either owned, maintained and/or controlled the premises" where she fell. On May 6, 2011, more than four months before the statute of limitations expired, the Port Authority submitted a certification to Ms. Beam stating that AFCO managed the cleaning contracts of the airlines that are responsible for cleaning and maintaining the area in which she fell. Moreover, on July 1,

7

2011, with more than two and a half months left in the limitations period, Ms. Beam received a copy of a work permit issued by the Port Authority allowing AFCO to perform janitorial and maintenance services at Newark Airport. Thus, Ms. Beam had ample opportunity to identify and name AFCO as a defendant within the two-year statute of limitations.

     Ms. Beam contends that she failed to name AFCO as a defendant earlier because there was no indication that AFCO had any responsibility over the stanchions over which she fell until October 2011, when it became clear that both the TSA and the Port Authority had denied control over the stanchions and the A2 security area. While there may have been confusion over who in fact was responsible for Ms. Beam's injuries, such confusion is often the case in slip and fall cases and does not relieve plaintiffs of their obligation to name any and all identifiable defendants within the statute of limitations period. Ms. Beam became aware that AFCO played a role in maintaining the area where she fell well within the two year statute of limitations period, but failed to name AFCO as a defendant within that period. Consequently, AFCO's Motion for Summary Judgment is granted.

### III.  CONCLUSION

     For foregoing reasons, AFCO's Motion for Summary Judgment is GRANTED. Ms. Beam's claim against AFCO is dismissed with prejudice.

     The Court will enter an order implementing this opinion.

                          _/s/ Dickinson R. Debevoise_____
                          DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: May 6, 2013